SCOTT ERIK ASPHAUG, OSB #833674
United States Attorney
District of Oregon
**MEREDITH D.M. BATEMAN, OSB #192273**
Assistant United States Attorney
meredith.bateman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:21-cr-00315-MO** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **KORY TARPENNING,** | |
| **Defendant.** | |

## I.    INTRODUCTION

Defendant Kory Tarpenning is an Olympic athlete-turned businessman who knowingly engaged in a multi-year pattern of underreporting significant distributions from his foreign companies while living a life of luxury in the Principality of Monaco.  He willfully filed false income tax returns for the years 2014 through 2018 and failed to report approximately $1.89 million he received in distributions from his foreign businesses after he was awarded a commission contract worth over €2,100,000.  Over five years, Mr. Tarpenning caused a tax loss

**Government's Sentencing Memorandum**                                                    **Page 1**

of $670,851.  Based on his conduct, the government requests that the Court sentence Mr.

Tarpenning to 18 months imprisonment.

## II.    THE OFFENSE CONDUCT

### A.    Background

Mr. Tarpenning is a former two-time Olympic pole vaulter who moved to Monaco over

twenty years ago.  He is a marketing consultant and owner of numerous foreign businesses

organized in France and Monaco.  His primary line of business is as a brand consultant to United

States companies that are interested in expanding their operations to Monaco.

### B.    The AS Monaco-Nike Sponsorship Agreement

Mr. Tarpenning owns a series of Monegasque consulting companies, including Sirius

Group SAM ("Sirius Group") and Sirius Sports Marketing ("Sirius Sports").  In 2014, Mr.

Tarpenning arranged a sponsorship agreement between Association Sportive de Monaco Football

Club SA ("AS Monaco") and Nike European Operations Netherlands B.V. ("Nike"), which the

companies entered effective July 1, 2014.  The agreement was valued as high as €20,000,000

over its five-year term.  In or around August 2014, Mr. Tarpenning demanded AS Monaco pay

him a commission for his role in arranging the agreement.  Although AS Monaco initially

refused, Mr. Tarpenning produced evidence of his close friendships with high-ranking Nike

officials, and their discussions about Nike investing in the team as a sponsor.

Subsequently, AS Monaco executed a contract with Sirius Group that paid Mr.

Tarpenning a 9% commission on all AS Monaco cash payments from Nike and a 6%

commission on athleticwear ordered by the team.  Between 2014 and 2018, AS Monaco paid

Sirius Group at least €2,100,000.  Mr. Tarpenning admits that he then caused this income, via

distributions from Sirius Group, to be paid to him directly or to third parties for his benefit.  [Plea Agreement, Dkt. #19, ¶6, pp. 2-3].

Mr. Tarpenning admits he knew the Sirius Group and Sirius Sports distributions constituted taxable income that had to be reported to the Internal Revenue Service on his annual tax returns.  [Plea Agreement, Dkt. #19, ¶6, p. 3].

### C.    Mr. Tarpenning Willfully Underreported Income From Other Businesses

Between 2014 and 2018, Mr. Tarpenning also willfully underreported income from three other of his successful businesses.  First, he materially underreported over $800,000 in income from Tar.Ca Sam ("Tar.Ca"), which operates the Nike Store in Monaco.  Second, he materially underreported $110,783 from his interest in the Monaco branch of Downstream Monaco SAM ("Downstream"), a brand consulting firm based in Portland, Oregon.  Finally, he materially underreported $61,107 from his interest in Tar.Ca Coffee SARL ("Tar.Ca Coffee"), which operates Starbucks Coffee in Monaco.  [Plea Agreement, Dkt. #19, ¶6, pp. 3-4]

### D.    Mr. Tarpenning Used the Money to Fund His Extravagant Lifestyle

Rather than reporting the income to the IRS, Mr. Tarpenning used the unreported income to fund his extravagant lifestyle in Monaco.  In addition to the house he purchased in 2015 in Eugene, Oregon, Mr. Tarpenning also has a property in the South of France worth $2,700,000, and rents a luxury apartment for $6,000 per month in Monaco.  He made significant payments to the International School of Monaco in each year of the investigation, which costs over $30,000 per year.

Mr. Tarpenning admits that he primarily transferred the Sirius Group and Sirius Sports distributions to (i) his joint personal bank account in Monaco; (ii) his joint personal bank account

in the United States; (iii) to pay for a second home in bought in Eugene, Oregon, in 2015 worth
$500,000; and (iv) to pay for his children's private school in Monaco.  [Plea Agreement, Dkt.
#19, ¶6, p. 3].  The chart below summarizes some of the distributions (in Euros) from Sirius
Group and Sirius Sports that Mr. Tarpenning used on personal expenses, based upon available
foreign bank account records obtained during the investigation.

| Source | 2014 | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|---|
| **Monaco Bank Account** | | | | | | |
| Sirius Group | | 182,500 | 23,000 | 92,500 | 116,500 | 414,500 |
| Sirius Sports | 19,406.96 | 122,913.70 | 32,025 | 18,000 | 27,000 | 219,345.66 |
| **Total Monaco Bank Account** | | | | | | **633,845.66** |
| **US Bank Account** | | | | | | |
| Sirius Group | | 4,545.41 | 15,526.94 | 63,423.61 | 72,465.18 | 155,961.14 |
| Sirius Sports | 16,867.14 | 19,794.74 | 32,136.99 | 39,210.67 | 7,900.54 | 115,910.08 |
| **Total US Bank Account** | | | | | | **271,871.22** |
| **Eugene Home** | | | | | | |
| Sirius Group | | | 2,735.49 | 15,555.93 | 7,658.19 | 25,949.61 |
| Sirius Sports | | 24,913.76 | 4,443.64 | 6,177.68 | 11,580.18 | 47,115.26 |
| **Total Eugene Home** | | | | | | **73,065.87** |
| **Private School** | | | | | | |
| Sirius Group | | 28,920 | 10,000 | 25,500 | 15,000 | 79,420 |
| Sirius Sports | 53,709 | 35,169 | 5,000 | 38,500 | 24,010 | 156,388 |
| **Total Private School** | | | | | | **235,808** |

In total, Mr. Tarpenning used €1,214,589.75 (approximately $1.35 million US Dollars)[1]

of the distributions from Sirius Group and Sirius Sports on those categories of personal expenses.

### E.     Mr. Tarpenning Knowingly Underreported Income

Mr. Tarpenning admits that between 2014 and 2018, he directed a London-based

accountant to prepare his tax returns based on the financial information he provided directly to

/ / /

/ / /

---

[1] This amount was derived using the IRS annual average conversion rates for the Eurozone for
the period 2014 and 2018.

**Government's Sentencing Memorandum**                                      **Page 4**

his accountant.  [Plea Agreement, Dkt. #19, ¶6, p. 3].  Mr. Tarpenning provided the accountant with financial information that he knew did not include all the distributions he received.

For tax years 2014, 2015, 2016, 2017, and 2018, Tarpenning signed, under penalty of perjury, each of his federal income tax returns, Form 1040, and caused them to be filed.  From 2014 through 2018, Tarpenning reported on his federal income tax returns, he earned only $541,095 in consulting income, when in fact, he knew he earned $2,435,525 from a variety of businesses that were not disclosed to the IRS.  This income was concealed from the IRS in a manner he knew willfully underreported his income by $1,894,430. The chart below summarizes the information reported and unreported on each of those returns.

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| Reported Net Consulting Income described as "Promoters of Performing Arts" | $89,247 | $104,515 | $114,076 | $83,639 | $149,618 |
| Unreported-Sirius Group (wages) | $4,255 | $263,631 | $171,118 | $297,099 | $257,755 |
| Unreported-Downstream (dividend income) | $42,217 | $25,700 | $25,518 | $17,348 | |
| Unreported-Tar.Ca (dividend income) | $218,112 | $7,463 | $138,427 | $284,935 | $202,830 |
| Unreported-Tar.Ca Coffee (dividend income) | $45,918 | $9,595 | | | $5,594 |
| Unreported-Sirius Sports (net business income) | $26,484 | $215,740 | $53,717 | $122,069 | |
| **Total Income from Businesses Not Reported to the IRS (By Year)** | **$336,986** | **$522,129** | **$388,780** | **$721,451** | **$466,179** |
| **Total Income Earned 2014-2018** | **$2,435,525** | | | | |
| **Total Income Reported to the IRS** | **$541,095** | | | | |
| **TOTAL UNREPORTED INCOME** | **$1,894,430** | | | | |

**Government's Sentencing Memorandum**                                           **Page 5**

By willfully underreporting his income, Mr. Tarpenning caused the following tax loss:

| Tax Year | Tax Loss |
|---|---|
| 2014 | $86,010 |
| 2015 | $147,125 |
| 2016 | $82,220 |
| 2017 | $266,371 |
| 2018 | $89,125 |
| **Total** | **$670,851** |

## III.   THE PLEA AGREEMENT & GUIDELINES COMPUTATIONS

Mr. Tarpenning agreed to plead guilty to Count One of the Information, which charges Making and Subscribing a False Federal Income Tax Return in violation of 26 U.S.C. § 7206(1). The parties agree that the following advisory Guidelines provisions apply to this case:

| Guidelines Section | Offense Level |
|---|---|
| 2T1.2(a)(1) and 2T4.1(H),<br>Tax loss of $670,851 | 20 |

The government will, subject to the limitations set forth in the agreement, recommend that Mr. Tarpenning receive a three (3) level reduction for acceptance of responsibility. The government also will, subject to the limitations set forth in the agreement, seek a two (2) level downward variance pursuant to 18 U.S.C. § 3553(a) based on the medical condition of Mr. Tarpenning's wife. Accordingly, considering the three-level reduction for acceptance of responsibility and the recommended variance, the resulting offense level is 15. Mr. Tarpenning's Criminal History Category is I, and the advisory sentencing range, therefore, is 18-24 months.

## IV.   ARGUMENT

### A.   The Government's Sentencing Recommendation

Consistent with the plea agreement, the government recommends a low-end sentence of 18-months imprisonment. Under the sentencing factors set forth in 18 U.S.C. § 3553(a), the

**Government's Sentencing Memorandum**                                    **Page 6**

government believes that the facts and Mr. Tarpenning's quick acceptance of responsibility support a low-end recommendation but disagrees with Probation's recommendation to depart below the advisory sentencing guidelines range.  Probation recommends a substantial departure from the sentencing guidelines range to account for the medical condition of Mr. Tarpenning's wife and his report that "he is responsible for most of the daily tasks around the house, including getting their 16-year-old son ready for school."  PSR, ¶59.  The government's low-end 18-month recommendation considers Mr. Tarpenning's history and characteristics under 18 U.S.C. § 3553(a)(1) and includes a two (2) level variance that is reasonable given the medical condition of Mr. Tarpenning's wife and that three of defendant's sons (ages 17, 24, and 28) all reside with Mr. Tarpenning and his wife in Monaco and can provide household support.

Additionally, 18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of defendant in the most effective manner.  These considerations weigh in favor of an 18-month sentence, given that general deterrence is an important consideration in sentencing defendants for tax crimes.  Mr. Tarpenning—who has resided overseas for over 20 years—exhibited the same course of fraudulent conduct in each of the false tax returns involved in the investigation.  He materially omitted income from several successful lines of business in which he knew he was involved, reporting only what he sought fit.  To afford adequate deterrence to Mr. Tarpenning—and others similarly situated residing outside the United States—the sentence should be no less than the low end recommended by the government. Aside from specific deterrence, a prison sentence of 18 months will convey to future tax evaders

**Government's Sentencing Memorandum**                                               **Page 7**

that this type of deliberate, illegal, multi-year conduct will not result in a slap-on-the-wrist.  To promote respect for the law and discourage future evaders, Mr. Tarpenning should be sentenced to 18 months in prison.

### B.     Restitution and Forfeiture

Under the terms of the plea agreement, Mr. Tarpenning agreed to pay restitution to the IRS.  Below is a table outlining the amounts owed in restitution:

| Tax Year | Tax Owed |
|----------|----------|
| 2014 | $86,010 |
| 2015 | $147,125 |
| 2016 | $82,220 |
| 2017 | $266,371 |
| 2018 | $89,125 |
| **Total** | **$670,851** |

As of the date of this memorandum, Mr. Tarpenning has made a pre-sentence payment of $85,000 to be applied to his owed restitution, which the IRS has acknowledged receiving.

## V.     CONCLUSION

Based on the foregoing, the government recommends that this Court sentence Kory Tarpenning to 18 months' imprisonment, pay $670,851 in restitution to the IRS, pay the $100 special fee assessment, followed by a one-year term of supervised release, subject to the standard conditions.

Dated: January 5, 2022                          Respectfully submitted,

                                                SCOTT ERIK ASPHAUG
                                                United States Attorney


                                                */s/ Meredith D.M. Bateman*
                                                MEREDITH D.M. BATEMAN, OSB #192273
                                                Assistant United States Attorney


**Government's Sentencing Memorandum**                                          **Page 8**